E-FILED
Thursday, 20 August, 2026 11:36:04 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cr-10006 |
| | ) | |
| CARLOS COLUNGA, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018**

COMES NOW Defendant, CARLOS COLUNGA ("Mr. Colunga"), by his attorney Karl W. Bryning, Assistant Federal Public Defender, and respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 for a reduction of his sentence to time served or such other relief as the Court deems appropriate, and in support of this Amended Motion, states as follows:

## I. INTRODUCTION

1. Mr. Colunga respectfully requests compassionate release based on a combination of extraordinary and compelling circumstances that, when considered together with the factors set forth in 18 U.S.C. § 3553(a), warrant immediate release. Mr. Colunga has served over seven years of his 168-month sentence and has exhausted his administrative remedies. He now presents multiple extraordinary and compelling reasons for release: serious medical conditions requiring surgical intervention after years of delay; profound family circumstances including the loss of both parents and

the need to support his family; substantial rehabilitation and exemplary institutional conduct; and significant sentencing disparities arising from outdated methamphetamine purity guidelines that no longer reflect culpability. Mr. Colunga has demonstrated genuine transformation during his incarceration. He has completed extensive educational and vocational programming, including major appliance repair certification, entrepreneurship courses, and anger management. He has maintained an exemplary disciplinary record with no incident reports in over six months. He has a concrete release plan that includes housing with his daughter, guaranteed employment, vocational training to reinstate his respiratory technician license, and strong family support. The § 3553(a) factors strongly favor release. Mr. Colunga has served sufficient time to reflect the seriousness of his offense, promote respect for the law, and provide just punishment. His rehabilitation, medical vulnerabilities, family losses, and viable reentry plan demonstrate that continued incarceration is no longer necessary to protect the public or provide adequate deterrence. For these reasons, Mr. Colunga respectfully requests that this Court grant his motion for compassionate release.

**II. JURISDICTION AND PROCEDURAL POSTURE**

2. This Court has jurisdiction to consider this motion under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018. 18 U.S.C. § 3582. The First Step Act expanded compassionate release by authorizing defendants to file motions directly with the district court after exhausting administrative remedies or waiting thirty days from submission of a request to the warden, whichever occurs earlier. *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021), *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020),

*United States v. Cooper*, 996 F.3d 283 (5th Cir. 2021) On February 20, 2019, Mr. Colunga was indicted on two counts: Count 1, Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; and Count 2, Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On March 26, 2021, Mr. Colunga pleaded guilty to both counts before Judge James E. Shadid. He was sentenced to 188 months' imprisonment on each count to run concurrently, with 120 months to run consecutively to his sentence in *United States v. Colunga*, Case No. 4:18-cr-00039-01 (E.D. Ark.), for a total term of 188 months' imprisonment, followed by five years of supervised release. On July 31, 2024, this Court granted Mr. Colunga's motion to reduce his sentence pursuant to Amendment 821, reducing his term from 188 months to 168 months. Mr. Colunga's projected release date under the First Step Act is May 2035. He is currently housed at FCI Coleman Low in Coleman, Florida.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. On April 16, 2025, Mr. Colunga submitted a request for compassionate release to Warden A. Mendoza at FCI Coleman Low. Warden Mendoza denied the request on April 24, 2025. Because more than thirty days have elapsed since Mr. Colunga's request and the Bureau of Prisons has not filed a motion on his behalf, he has fully exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). This Court therefore has jurisdiction to consider this motion. *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021), *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020)

## IV. LEGAL STANDARD

### A. Framework for Compassionate Release

4. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. 18 U.S.C. § 3582. The First Step Act amended this provision to permit defendants to file their own motions for compassionate release after exhausting administrative remedies. *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021), *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021) District courts are not bound by the Sentencing Commission's policy statement at U.S.S.G. § 1B1.13 when evaluating defendant-filed motions for compassionate release. *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021) As the Seventh Circuit held in *Gunn*, because the Sentencing Commission has not issued a policy statement applicable to prisoner-initiated motions, district courts must resolve such requests under the statutory standard of "extraordinary and compelling reasons" without restriction from the policy statement, which applies only to motions filed by the Director of the Bureau of Prisons. *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020) District courts have discretion to independently determine what constitutes extraordinary and compelling reasons. *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021), *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), *United States v. Cooper*, 996 F.3d 283 (5th Cir. 2021) The inquiry is two-fold. *United States v. Centeno-*

*Morales*, 90 F.4th 274 (4th Cir. 2024), *United States v. Osman*, No. 23-6544, 2024 U.S. App. LEXIS 19328 (4th Cir. Aug. 2, 2024) First, the court must determine whether the defendant is eligible for a sentence reduction by finding that extraordinary and compelling reasons exist. *United States v. Centeno-Morales*, 90 F.4th 274 (4th Cir. 2024), *United States v. Osman*, No. 23-6544, 2024 U.S. App. LEXIS 19328 (4th Cir. Aug. 2, 2024) Second, the court must evaluate the relevant § 3553(a) factors to determine whether release is appropriate. *United States v. Centeno-Morales*, 90 F.4th 274 (4th Cir. 2024), *United States v. Osman*, No. 23-6544, 2024 U.S. App. LEXIS 19328 (4th Cir. Aug. 2, 2024), *United States v. Butler*, 845 F. App'x 74 (2d Cir. 2021) A district court need not analyze the § 3553(a) factors if it finds no extraordinary and compelling reason exists or that the defendant is a danger to the public. *United States v. Giron*, 15 F.4th 1343 (11th Cir. 2021) The November 1, 2023, amendments to U.S.S.G. § 1B1.13, while not binding on prisoner-filed motions, provide persuasive guidance. These amendments enumerate several categories of extraordinary and compelling reasons, including medical circumstances, age, family circumstances, abuse while in custody, other comparable circumstances, and unusually long sentences in light of changes in the law. 18 U.S.C. Appx § 1B1.13

**B. Evaluating Medical Circumstances**

5. Medical conditions may constitute extraordinary and compelling reasons when they substantially diminish a defendant's ability to provide self-care within the correctional environment or when treatment is inadequate. *United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2022), 18 U.S.C. Appx § 1B1.13 The relevant inquiry is whether the

defendant's medical circumstances, viewed in their totality, warrant compassionate release. *United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2022) Courts have recognized that the analysis is not limited to terminal illness but includes situations where incarceration exacerbates medical suffering or where the defendant's health needs are not timely or adequately addressed. Under the updated policy statement, medical circumstances include: terminal illness; serious physical or medical conditions, functional or cognitive impairments, or deteriorating health due to aging that substantially diminish the ability to provide self-care and from which recovery is not expected; medical conditions requiring long-term or specialized care not being provided; and infectious disease or public health emergency risks that cannot be adequately mitigated. 18 U.S.C. Appx § 1B1.13. Well-controlled chronic conditions that do not substantially diminish self-care ability generally do not meet the threshold. *United States v. Thompson*, 984 F.3d 431 (5th Cir. 2021), *United States v. Marcussen*, 15 F.4th 855 (8th Cir. 2021)

**C. Sentencing Disparities and Changes in Law**

6. The updated policy statement recognizes that an "unusually long sentence" may constitute an extraordinary and compelling reason where a defendant has served at least ten years and a change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed today, after full consideration of the defendant's individualized circumstances. 18 U.S.C. Appx § 1B1.13, *United States v. Moody*, 115 F.4th 304 (4th Cir. 2024) District courts may consider sentencing disparities resulting from changes in law, including the effect of guideline

amendments, as part of the extraordinary and compelling reasons analysis. *United States v. Moody*, 115 F.4th 304 (4th Cir. 2024) Such disparities do not mandate relief but must be weighed with the defendant's individualized circumstances. *United States v. Moody*, 115 F.4th 304 (4th Cir. 2024) Courts have found extraordinary and compelling reasons where defendants received severe sentences based on methamphetamine purity enhancements that no longer reflect culpability. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) The Fourth Circuit held that district courts may permissibly treat as extraordinary and compelling reasons the severity of defendants' § 924(c) sentences and the extent of disparity between those sentences and sentences provided under the First Step Act, based on individualized assessments. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)

## V. STATEMENT OF FACTS

### A. The Offense and Sentencing

7. On February 11, 2019, Mr. Colunga was arrested after transporting methamphetamine from Texas to Illinois with the intent to distribute. Law enforcement recovered approximately 4.12 kilograms of "Ice" methamphetamine, 1.4 kilograms of methamphetamine mixture, and 9 kilograms of marijuana. Mr. Colunga cooperated immediately with police, consented to the vehicle search, and admitted to transporting the methamphetamine. He also admitted to two prior trips transporting smaller quantities. The Presentence Investigation Report calculated a total offense level of 33 and a criminal history category of IV, resulting in a guideline range of 188 to 235 months. The base offense level of 36 was derived from the converted drug weight of

85,223.47 kilograms of marijuana equivalency, which was driven primarily by the high purity of the methamphetamine seized. Mr. Colunga received a three-level reduction for acceptance of responsibility. On March 26, 2021, Mr. Colunga was sentenced to 188 months' imprisonment, with 120 months to run consecutively to his prior federal sentence in the Eastern District of Arkansas. On July 31, 2024, this Court reduced his sentence to 168 months pursuant to Amendment 821. As of August 2026, Mr. Colunga has served approximately seven years and five months of his sentence, which represents over 50 percent of his sentence. The Bureau of Prisons lists his release date as May 31, 2035. He is currently housed at FCI Coleman Low and just learned that he qualifies for camp placement.

**B. Medical Conditions and Treatment Delays**

8. Since July 19, 2022, Mr. Colunga has suffered from a large chest wall lipoma, later diagnosed as a benign lipomatous neoplasm of the skin and subcutaneous tissue of the trunk. For nearly three years, this condition was documented repeatedly in his medical records but no action was taken to remove it. The lipoma grew progressively, causing increasing discomfort, restricted mobility, and interference with daily activities. On January 7, 2022, medical staff noted a large lipoma to the left upper quadrant of the abdomen and ordered an ultrasound. On July 19, 2022, the condition was again documented as a large lipoma affecting Mr. Colunga's comfort. Despite these early assessments, surgical intervention was not recommended until June 9, 2025—nearly three years after initial documentation—when a surgeon evaluated Mr. Colunga via telemedicine and recommended excision of a 14-centimeter chest wall lipoma. On

August 27, 2025, Mr. Colunga underwent surgical excision of the lipoma at the University of Florida Health Leesburg Hospital. The post-operative care proved difficult and prolonged. Due to persistent serosanguineous drainage from the large chest wall mass, a Jackson-Pratt (JP) drain was placed and remained in situ until September 2025. The JP drain significantly restricted Mr. Colunga's movement, caused ongoing pain (rated 7 out of 10), and required him to rely heavily on BOP medical staff for basic wound care and pain management. He was prescribed acetaminophen with codeine for pain control. The prolonged delay before surgical intervention and the extended recovery period imposed substantial hardship on Mr. Colunga. For years, he endured the cumulative burden of the untreated lipoma while managing other chronic conditions. Mr. Colunga has been left permanently scarred and disfigured. One side of his abdomen is larger than the other is sunken. In addition to the lipoma, Mr. Colunga suffers from hypertension, hyperlipidemia, myopia, hypermetropia, astigmatism, presbyopia, and obesity (BMI 40.0-44.9). He is prescribed amlodipine, hydrochlorothiazide, and atorvastatin to manage these conditions. His medical records document instances of medication noncompliance, elevated blood pressure readings, and counseling regarding the risks of uncontrolled hypertension, including stroke, myocardial infarction, vision loss, kidney disease, and death.

**C. Family Circumstances and Personal Losses**

9. Mr. Colunga has suffered profound family losses during his incarceration. Both of his parents passed away while he was imprisoned, and he was denied the opportunity to say goodbye to either of them. His father, Jose Colunga, and his mother,

Sylvia Colunga, were lifelong sources of support, and their deaths represent irreplaceable losses. Mr. Colunga's youngest son, Brandon, was only ten years old when Mr. Colunga was incarcerated in 2019. Brandon is now sixteen years old and will enter his senior year of high school in 2027. Mr. Colunga has missed Brandon's entire adolescence—his formative years, school achievements, and daily growth. His son Carlos Colunga Jr., now in his thirties, has navigated young adulthood without his father's presence. Mr. Colunga's daughter Leanna married in 2024, and he was unable to attend her wedding—a milestone he deeply regrets missing. Leanna, now 25 years old, took on immense responsibility during her father's absence. At only nineteen, she worked in a refinery to support the family after they went through bankruptcy. She assumed parental and sibling responsibilities for her ten-year-old brother while managing household finances and bills. Mr. Colunga has six grandchildren, three of whom he has never held or met. His older children have had children during his incarceration, and he has been unable to be present for any of these births or to develop relationships with his grandchildren. This deprivation of familial bonds—particularly with young grandchildren—represents an extraordinary hardship. Despite these devastating losses, Mr. Colunga has an excellent release plan including the strong family support of surviving members of his family.

**D. Rehabilitation and Institutional Conduct**

10. Mr. Colunga has demonstrated exceptional rehabilitation and institutional adjustment. His progress report reflects extensive educational and vocational programming. He completed a major appliance repair vocational training program, a

credential that directly supports his release plan to open an appliance repair business with his son-in-law. He has completed courses in entrepreneurship, real estate, personal finance, principles of accounting, job success, job interviewing, employment opportunities, written communications, anger management, stress management, anxiety management, basic math, money management, algebra, and dental health. His disciplinary record is exemplary: he has had no incident reports in at least the past six months. He has maintained regular work assignments and consistently participated in educational programming. His care level is stable, and he is eligible for First Step Act incentive awards. He has been assessed at a low recidivism risk level. Mr. Colunga participated in substance abuse treatment, completing drug education and receiving a diagnosis for drug abuse treatment. He has acknowledged his substance use history and his need for continued accountability.

**E. Release Plan and Community Support**

11. Mr. Colunga has a detailed and concrete release plan. Upon release, he will reside with his daughter Leanna Ingles in Freeport, Texas, where she has committed to supervise and support his reintegration. Leanna has explicitly stated that she will take responsibility for assisting him in reintegrating into the home and community, ensuring that he takes the correct steps, surrounds himself with a positive environment, and follows all expectations. Mr. Colunga has guaranteed employment with his son-in-law's electrical company, which will provide immediate income and stability. He also plans to enroll in community college and reinstate his respiratory technician license so that he can return to his former career working closely with

hospitals as a respiratory and wound care technician. His long-term goal is to open an appliance repair shop with his son-in-law, leveraging the vocational training he completed in federal custody and his son-in-law's business contacts. Leanna has confirmed that Freeport, Texas offers many job opportunities, particularly in the refinery and industrial fields, and she is personally committed to helping her father secure employment and support his reestablishment. She will assist with housing, transportation, work, and any support he needs to adjust and succeed. Mr. Colunga's family has expressed unwavering support for his release. Leanna describes her father as "the heart of our family," a loving and dependable man who has always put family first. She acknowledges the mistakes he made but emphasizes his genuine remorse, his big heart, and his sincere desire to make things right. She believes he deserves a second chance to be present, protective, and an active part of their lives.

## VI. ARGUMENT

### A. Mr. Colunga Presents Extraordinary and Compelling Reasons for Release

12. Mr. Colunga's request for compassionate release is supported by multiple extraordinary and compelling reasons that, when considered individually and cumulatively, warrant a sentence reduction. These reasons include serious medical conditions exacerbated by delayed treatment, profound family circumstances, exemplary rehabilitation, and significant sentencing disparities arising from outdated methamphetamine purity guidelines.

#### (1) Serious Medical Conditions and Inadequate Timeliness of Care

13. Mr. Colunga's medical history reflects a prolonged period of inadequate and delayed treatment that imposed substantial hardship and meets the threshold for extraordinary and compelling reasons. From July 2022 until June 2025—nearly three years—Mr. Colunga suffered from a large and growing chest wall lipoma that was documented repeatedly in his medical records but not surgically addressed. By the time a surgeon finally recommended excision in June 2025, the lipoma had grown to approximately 14 centimeters and was significantly affecting his comfort, mobility, and daily functioning. The Seventh Circuit has recognized that district courts may independently assess whether a defendant's medical circumstances, viewed in their totality, warrant compassionate release. *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020) Courts have emphasized that the inquiry is not limited to terminal illness but includes situations where incarceration exacerbates medical suffering or where the defendant's health needs are not timely or adequately addressed. The adequacy and timeliness of medical care are central to evaluating medical-based compassionate release claims. Here, Mr. Colunga endured years of avoidable discomfort before surgical intervention was even recommended. When surgery finally occurred in August 2025, the post-operative recovery was difficult and prolonged due to the size of the excised mass. Mr. Colunga required a Jackson-Pratt drain that remained in place for weeks, significantly restricting his movement, causing ongoing pain, and requiring heavy reliance on BOP medical staff for basic wound care and pain relief. The drain had to remain until drainage ceased, and Mr. Colunga experienced serosanguineous fluid output that necessitated daily wound care and monitoring. When viewed cumulatively,

Mr. Colunga's medical history reflects a level of hardship that exceeds ordinary incarceration. The prolonged delay before intervention and the extended recovery period involving invasive post-operative measures demonstrate that his medical needs were not addressed in a timely manner. This pattern of reactive rather than preventative care underscores a broader inadequacy in the timeliness of his medical treatment. In addition to the lipoma, Mr. Colunga manages multiple chronic conditions—hypertension, hyperlipidemia, and obesity—that require ongoing medication and monitoring. His medical records document elevated blood pressure readings and counseling regarding the serious risks of uncontrolled hypertension, including stroke, myocardial infarction, vision loss, kidney disease, and death. The cumulative burden of these conditions, combined with the years of untreated lipoma symptoms, supports a finding of extraordinary and compelling reasons.

**(2) Family Circumstances Constitute Extraordinary and Compelling Reasons**

14. Mr. Colunga has experienced profound family losses and circumstances that, when considered together, constitute extraordinary and compelling reasons for release. The updated policy statement recognizes family circumstances as a category of extraordinary and compelling reasons, including the death or incapacitation of caregivers and circumstances similar in gravity involving immediate family members. 18 U.S.C. Appx § 1B1.13 Mr. Colunga lost both of his parents during his incarceration and was denied the opportunity to say goodbye to either of them. The death of both parents while imprisoned represents an irreplaceable loss and a circumstance of extraordinary gravity. His youngest son, Brandon, was only ten years old when Mr.

Colunga was incarcerated and is now sixteen, entering his senior year of high school. Mr. Colunga has missed Brandon's entire adolescence and formative years. Mr. Colunga missed his daughter Leanna's wedding in 2024—a milestone he deeply regrets. He has six grandchildren, three of whom he has never held or met. The deprivation of these familial bonds, particularly with young grandchildren during their early developmental years, is an extraordinary hardship. Moreover, Mr. Colunga's family faced significant hardship during his absence. The family went through bankruptcy, and his daughter Leanna, at only nineteen years old, was forced to work in a refinery and assume parental and sibling responsibilities for her ten-year-old brother. She managed household finances and bills while trying to keep the family stable. The burden placed on Leanna and the family during Mr. Colunga's incarceration intensified their hardship and underscores the extraordinary nature of these circumstances. While the policy statement enumerates specific family circumstances such as the incapacitation of a caregiver, it also provides that a defendant may establish circumstances similar in gravity involving other immediate family members. 18 U.S.C. Appx § 1B1.13 The combination of losing both parents, missing a child's entire adolescence, missing a daughter's wedding, never meeting three grandchildren, and the severe financial and emotional hardship imposed on the family during incarceration presents circumstances similar in gravity to those enumerated. Mr. Colunga's family has expressed unwavering support and a sincere desire for him to return home so that he can be present, protective, and actively part of their lives. His daughter Leanna has committed to supervising his reintegration and ensuring he takes the correct steps to

remain on a responsible path. The family's readiness to support Mr. Colunga and his sincere remorse and commitment to change demonstrate that he is ready for a second chance.

**(3) Rehabilitation and Institutional Record Support Release**

15. Mr. Colunga's exemplary rehabilitation and institutional conduct weigh heavily in favor of compassionate release. Under the updated policy statement, rehabilitation may be considered in combination with other circumstances in determining whether a reduction is warranted. 18 U.S.C. Appx § 1B1.13 Mr. Colunga has completed extensive educational and vocational programming, demonstrating a sincere commitment to self-improvement. He completed a major appliance repair vocational training program—a 210-hour certification that provides him with marketable skills directly tied to his release plan. He has completed courses in entrepreneurship, real estate, personal finance, accounting, job success, job interviewing, employment opportunities, written communications, anger management, stress management, anxiety management, and basic math. This breadth of programming reflects genuine transformation and a commitment to leading a law-abiding life. His disciplinary record is exemplary, with no incident reports in at least the past six months. He has been assessed at a low recidivism risk level and is eligible for First Step Act incentive awards. He has maintained regular work assignments and consistently participated in educational programming. Mr. Colunga has also acknowledged his substance use history and participated in drug education and treatment. His willingness to address his substance abuse issues and his completion of

multiple self-improvement courses demonstrate that he has taken responsibility for his actions and is committed to change. While rehabilitation alone is not an extraordinary and compelling reason, it may be considered in combination with other circumstances. 18 U.S.C. Appx § 1B1.13 Here, Mr. Colunga's rehabilitation, when combined with his medical conditions, family losses, and viable reentry plan, supports a finding that extraordinary and compelling reasons exist.

**(4) Sentencing Disparities Arising from Outdated Methamphetamine Purity Guidelines**

16. Mr. Colunga's sentence was significantly driven by methamphetamine purity enhancements that no longer reflect culpability and that have created a gross disparity between his sentence and sentences likely to be imposed today. District courts may consider sentencing disparities resulting from changes in law as part of the extraordinary and compelling reasons analysis, particularly where a defendant has served at least ten years and the change would produce a gross disparity. 18 U.S.C. Appx § 1B1.13, *United States v. Moody*, 115 F.4th 304 (4th Cir. 2024) The Presentence Investigation Report calculated Mr. Colunga's base offense level at 36 based on a converted drug weight of 85,223.47 kilograms of marijuana equivalency. This conversion was driven primarily by the high purity of the methamphetamine seized—the 4.12 kilograms of "Ice" methamphetamine were converted at a 20,000:1 ratio (20 kilograms of marijuana per gram of Ice), resulting in an 82,400-kilogram marijuana equivalent. The disparity between actual methamphetamine and methamphetamine mixture results in dramatically different sentences: a defendant with 4.5 kilograms of

actual methamphetamine faces a base offense level of 38 (235 to 293 months), while a defendant with the same amount of methamphetamine mixture faces a base offense level of 32 (121 to 151 months)—a difference of more than nine years at the low end. The rationale for this disparity—that higher purity indicates greater involvement in the distribution chain—is no longer valid. The Sentencing Commission originally assumed that controlled substances are cut and diluted as they pass from wholesalers to street-level dealers, and that a defendant possessing high-purity methamphetamine is likely close to the source of supply. However, modern methamphetamine is remarkably pure at all distribution levels, rendering purity an unreliable proxy for culpability. National data show that the average purity of methamphetamine today exceeds 90 percent across the country. From 2011 to 2016, average purity ranged from 85.5 percent to 95 percent. By 2016, it averaged 93.5 percent pure. Today, low-level street dealers distribute methamphetamine of similar purity to that at the top of the supply chain. Courts have recognized that "because today's methamphetamine is substantially pure, purity is not a proxy for relative culpability. "The district court in United States v. Ibarra-Sandoval found that "the Commission's assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality." Similarly, in United States v. Bean, the court stated, "In the current market, the purity of methamphetamine does not necessarily reflect a defendant's role in the distribution chain. Low-level street dealers are just as likely as so-called 'kingpins' to have access to, and be charged with distribution of, extremely pure methamphetamine. In effect, then, the purity-based methamphetamine guidelines are treating all defendants as kingpins,

even though that is not necessarily true." Courts have granted compassionate release or downward variances in cases challenging the outdated purity guidelines. In United States v. Robinson (S.D. Miss. 2022), the district court recognized that the methamphetamine guidelines' emphasis on purity as an indicator of culpability is outdated, finding that high-purity methamphetamine is now widely available and does not necessarily indicate a defendant's level of involvement in drug distribution, and granted a downward variance. Mr. Colunga's sentencing was based on the assumption that his possession of high-purity methamphetamine indicated significant involvement or leadership within a drug trafficking operation. However, national data and modern court findings demonstrate that such an assumption is no longer valid. Low-level defendants like Mr. Colunga often receive sentences designed for large-scale traffickers simply because the methamphetamine seized was unusually pure. The purity-based enhancement inflated Mr. Colunga's sentencing range beyond what is fair or necessary under § 3553(a). If sentenced today with the understanding that purity is not a proxy for culpability, and if the converted drug weight were recalculated using the methamphetamine mixture guidelines rather than the actual methamphetamine guidelines, Mr. Colunga would face a substantially lower guideline range. The Fourth Circuit has held that district courts may permissibly treat as extraordinary and compelling reasons the severity of defendants' sentences and the extent of disparity between those sentences and sentences provided under changed legal understandings, based on individualized assessments. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) The court emphasized that these judgments were the product of individualized

assessments of each defendant's sentence and full consideration of individual circumstances, including relative youth at the time of the offense, substantial time served, excellent institutional records, and substantial steps toward rehabilitation. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) Mr. Colunga has served over seven years—more than 35 percent of his full term. He was 44 years old at the time of his offense and is now 51. He has an excellent institutional record, no recent disciplinary incidents, extensive vocational and educational programming, and substantial rehabilitation. When these individualized circumstances are combined with the outdated purity-based enhancement that drove his sentence, a finding of extraordinary and compelling reasons is warranted. The updated policy statement recognizes that an unusually long sentence may constitute an extraordinary and compelling reason where a defendant has served at least ten years and a change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed today. 18 U.S.C. Appx § 1B1.13 While Mr. Colunga has not yet served ten years, district courts retain discretion to consider sentencing disparities in combination with other extraordinary and compelling circumstances. *United States v. Moody*, 115 F.4th 304 (4th Cir. 2024) Here, the combination of Mr. Colunga's medical conditions, family losses, rehabilitation, and the outdated purity enhancement that significantly inflated his sentence presents extraordinary and compelling reasons warranting release.

**B. The § 3553(a) Factors Support Release**

17. After finding extraordinary and compelling reasons, the Court must consider the § 3553(a) factors to determine whether release is appropriate. *United States*

*v. Centeno-Morales*, 90 F.4th 274 (4th Cir. 2024), *United States v. Osman*, No. 23-6544, 2024 U.S. App. LEXIS 19328 (4th Cir. Aug. 2, 2024), *United States v. Butler*, 845 F. App'x 74 (2d Cir. 2021) Those factors strongly favor Mr. Colunga's release.

**(1) Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

18. Mr. Colunga's offense involved transporting methamphetamine from Texas to Illinois with the intent to distribute. He cooperated immediately with law enforcement, consented to the vehicle search, and admitted his conduct. His criminal history at the time of sentencing consisted of two prior state theft convictions and one prior federal drug trafficking conviction. He has now served over seven years of his 168-month sentence. Mr. Colunga's institutional conduct has been exemplary. He has completed extensive vocational and educational programming, including a major appliance repair certification, entrepreneurship courses, personal finance, accounting, job success training, and anger management. He has no recent disciplinary incidents and has been assessed at a low recidivism risk level. He has participated in drug education and treatment. Mr. Colunga has suffered profound personal losses during his incarceration, including the deaths of both parents and the inability to be present for major family milestones. He has endured serious medical conditions and delayed treatment that imposed substantial hardship. His genuine remorse, family support, and concrete release plan demonstrate that he is ready to reintegrate successfully.

**(2) Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

19. Mr. Colunga has served over seven years of his 168-month sentence—more than 50 percent of his full term. The time he has already served, combined with the hardship of losing both parents, missing his son's formative years, enduring serious medical conditions with delayed treatment, and the deprivation of familial bonds with his grandchildren, has provided substantial punishment. Further incarceration is not necessary to reflect the seriousness of the offense or promote respect for the law.

**(3) Need to Afford Adequate Deterrence and Protect the Public**

20. Mr. Colunga's low recidivism risk assessment, exemplary institutional conduct, extensive rehabilitation programming, and strong family support system demonstrate that he does not pose a danger to the public. His daughter has committed to supervising his reintegration and ensuring he takes the correct steps to remain on a responsible path. He has guaranteed employment and a concrete plan to continue his education and reinstate his respiratory technician license. Mr. Colunga has acknowledged his substance use history and participated in treatment. His genuine remorse and commitment to change, as expressed by him and his family, demonstrate that he is ready to lead a law-abiding life. Continued incarceration is not necessary to afford adequate deterrence or protect the public.

**(4) Need to Provide the Defendant with Medical Care or Other Correctional Treatment**

21. Mr. Colunga has completed extensive educational, vocational, and substance abuse programming during his incarceration. His medical needs can be

managed in the community with the support of his family. Further incarceration is not necessary to provide medical care or correctional treatment.

**(5) Avoiding Unwarranted Sentencing Disparities**

22. Mr. Colunga's sentence was driven by an outdated purity-based enhancement that treated him as a high-level trafficker when the purity of methamphetamine no longer reflects culpability. Defendants sentenced today with similar conduct but with the understanding that purity is not a proxy for culpability would receive substantially lower sentences. Releasing Mr. Colunga after over seven years of imprisonment, given his individualized circumstances, would avoid an unwarranted disparity and promote fairness.

## VII. CONCLUSION

23. For the foregoing reasons, Mr. Colunga respectfully requests that this Court grant his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018, and reduce his sentence to time served or such other relief as the Court deems appropriate and just.

Respectfully submitted,

Dated: August 20, 2026

CARLOS COLUNGA, Defendant

THOMAS PATTON, Federal Public Defender

s/Karl W. Bryning
KARL W. BRYNING
Assistant Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: (309) 671-7891
Email: karl_bryning@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2026, the foregoing Amended Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was filed in this Court using CM/ECF which will send notification of the parties of record and a copy was sent via U.S. Mail to Mr. Colunga.

s/Karl W. Bryning
KARL W. BRYNING
Assistant Federal Public Defender