E-FILED
Saturday, 14 November, 2026 06:51:26 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

UNITED STATES OF AMERICA,
Plaintiff,

v.

CARLOS COLUNGA,
Defendant.

Case No. 1:19-CR-10006-JEH-EIL

**Order**

Now before the Court are Defendant Carlos Colunga's *pro se* Motion for Compassionate Release (D. 68)[1] and counseled Amended Motion for Compassionate Release (D. 76). Colunga argues that his medical conditions and delayed treatment, family circumstances, rehabilitation, institutional conduct, release plan, and sentencing disparity arising from the methamphetamine-purity Guidelines collectively warrant compassionate release. The Government responds that Colunga failed to exhaust his administrative remedies, has not established extraordinary and compelling reasons, and is not entitled to release under the 18 U.S.C. § 3553(a) factors. For the reasons set forth *infra*, the Amended Motion is DENIED and, accordingly, the pro se Motion is MOOT.

**I**

**A**

On February 20, 2019, a grand jury charged Colunga with conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

possession with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On March 26, 2021, Colunga pleaded guilty to both counts. The Presentence Investigation Report calculated a total offense level of 33 and placed Colunga in criminal-history category IV, resulting in an advisory Guidelines range of 188 to 235 months' imprisonment. The Court sentenced him to concurrent terms of 188 months' imprisonment on each count, with 120 months to run consecutively to his sentence in Eastern District of Arkansas Case No. 18-cr-00039-01, followed by five years of supervised release and a $200 mandatory special assessment. On July 31, 2024, the Court granted Colunga a sentence reduction under Amendment 821 and reduced his concurrent terms of imprisonment from 188 months to 168 months, while retaining the requirement that 120 months run consecutively to the Eastern District of Arkansas sentence.

On March 2, 2026, Colunga, proceeding *pro se*, filed a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. On March 30, 2026, the Court acknowledged receipt of the motion, appointed the Federal Public Defender to represent Colunga, and directed appointed counsel to file either an amended motion or a status report within 60 days. Following extensions of that deadline, counsel filed an Amended Motion for Compassionate Release on August 20, 2026, seeking a reduction of Colunga's 168-month sentence to time served or other appropriate relief under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act. The Court directed the Government to respond and subsequently extended its response deadline to October 13, 2026, which the Government filed on that date along with an exhibit.

**B**

From approximately February 9 through February 11, 2019, Colunga participated in a methamphetamine-trafficking conspiracy in Tazewell County, within the Central District of Illinois. Colunga drove from Texas with his niece and codefendant, Jennifer L. Garza, transporting approximately

4.12 kilograms of "Ice" methamphetamine, 1.4072 kilograms of a methamphetamine mixture or substance, and 9.072 kilograms of marijuana.

After making purchases at a Walmart in East Peoria, Colunga drove to a Target store in East Peoria, entered the store, met another individual, and left without making a purchase. Colunga and that individual then entered the Target parking lot, where the individual paid Colunga $6,000 for methamphetamine. As the purchaser exited the vehicle, law-enforcement officers approached and promptly arrested Colunga. Colunga thereafter consented to a search of the vehicle, admitted that he had transported the methamphetamine, and cooperated with law enforcement. He also admitted making two prior trips involving smaller quantities.

At the time he committed this conduct, he was on pretrial release on a case pending in the Eastern District of Arkansas, where he was charged with conspiring, from January 2017 through September 2018, to distribute and possess with intent to distribute five kilograms or more of cocaine. In that case, Colunga admitted that he had trafficked cocaine for eight months and made between 20 and 30 trips transporting cocaine across the United States. The Arkansas court later sentenced him to 120 months' imprisonment followed by five years of supervised release.

## II

### A

Colunga argues that extraordinary and compelling reasons arise from his medical conditions and delayed treatment, family circumstances, rehabilitation and institutional conduct, release plan, and sentencing disparity associated with the methamphetamine-purity Guidelines, considered individually and collectively.

Colunga principally relies on a large chest-wall lipoma that was documented beginning in 2022 but was not surgically removed until August 27, 2025. He asserts that the mass grew to approximately fourteen centimeters during that period,

causing discomfort, restricted mobility, and interference with daily activities. He further asserts that his postoperative recovery was painful and prolonged because a Jackson-Pratt drain remained in place into September 2025, restricted his movement, and required daily wound care. Colunga states that the surgery left him permanently scarred and disfigured.

Colunga also relies on hypertension, hyperlipidemia, obesity, myopia, hypermetropia, astigmatism, and presbyopia, which require medication and monitoring. He contends that the delay in treating the lipoma, combined with his chronic conditions, reflects reactive rather than timely and preventive medical care and imposed hardship exceeding that ordinarily associated with incarceration.

Colunga next argues that his family circumstances are extraordinary and compelling because both parents died during his incarceration and he was unable to say goodbye to either of them. He emphasizes that his youngest son was ten years old when Colunga entered custody and is now sixteen, that he missed his daughter's 2024 wedding, and that he has six grandchildren, three of whom he has never met or held. He further asserts that his daughter assumed substantial financial and family responsibilities during his absence, including working at a refinery, managing household expenses, and helping care for her younger brother after the family experienced bankruptcy. According to Colunga, these losses, missed milestones, and burdens upon his family collectively constitute circumstances comparable in gravity to the family circumstances identified in U.S.S.G. § 1B1.13(b)(3).

Colunga acknowledges that he has not served the ten years required by U.S.S.G. § 1B1.13(b)(6) for an unusually long sentence based on a change in law, but he nevertheless argues that the Court may consider the asserted disparity arising from the methamphetamine-purity Guidelines together with his medical conditions, family losses, rehabilitation, and individualized circumstances. Specifically, he argues that his sentence was driven by the Guidelines' treatment of 4.12 kilograms of "Ice" methamphetamine, which contributed to a

converted drug weight of 85,223.47 kilograms of marijuana equivalency and a base offense level of 36. He contends that the Guidelines' distinction between actual methamphetamine and a methamphetamine mixture rests on an outdated assumption that purity reliably indicates a defendant's proximity to the source of supply or position in the distribution chain. According to Colunga, modern methamphetamine is commonly more than ninety percent pure at all distribution levels, making purity an unreliable measure of culpability and causing lower-level offenders to receive sentences intended for more significant traffickers.

Colunga also relies on his rehabilitation, including completion of major-appliance repair training and courses addressing entrepreneurship, real estate, personal finance, accounting, employment skills, written communication, anger management, stress management, anxiety management, mathematics, money management, and dental health. He states that he has maintained regular work assignments, participated in drug education and treatment, qualified for First Step Act incentives, and been assessed as presenting a low risk of recidivism. Although acknowledging that rehabilitation alone cannot establish an extraordinary and compelling reason, Colunga argues that his programming and institutional adjustment support relief when considered with his medical and family circumstances. He characterizes his disciplinary record as exemplary because he received no incident report during the six months preceding the Amended Motion.

As to the § 3553(a) factors, Colunga emphasizes that he cooperated with law enforcement, consented to the vehicle search, admitted his conduct, and accepted responsibility. He argues that more than seven years of incarceration, together with his family losses and medical hardship, has provided sufficient punishment to reflect the seriousness of the offense and promote respect for the law. He further contends that his low recidivism-risk assessment, programming, family support, and proposed employment demonstrate that continued

incarceration is unnecessary to deter future misconduct or protect the public.

If released, Colunga proposes to live with his daughter in Freeport, Texas, work for his son-in-law's electrical company, enroll in community college, seek reinstatement of his respiratory-technician license, and eventually open an appliance-repair business. His daughter has offered to assist with housing, transportation, employment, and compliance during his reintegration. Colunga therefore requests a reduction to time served or other appropriate relief.

**B**

The Government first argues that Colunga failed to satisfy § 3582(c)(1)(A)'s exhaustion requirement because his April 2025 request to the Warden did not present the same grounds later raised in the Amended Motion. The Government notes that the Warden's response stated that Colunga had not identified a qualifying circumstance or submitted supporting documentation. It further observes that Colunga's August 2025 surgery and postoperative wound care occurred after his administrative request and that the record does not establish when some of the asserted family circumstances arose. Because Colunga bears the burden of demonstrating exhaustion and did not show that the Bureau of Prisons received an opportunity to evaluate those grounds, the Government contends that the Amended Motion should be denied.

On the merits, the Government responds that Colunga's medical conditions are neither terminal nor sufficiently serious to substantially diminish his ability to provide self-care in custody. It notes that an ultrasound ordered after the lipoma was identified found no suspicious indication of neoplasm or an infectious process. The Government further relies on an April 8, 2025, examination during which Colunga reported exercising four days per week through pushups, burpees, and jogging, denied discomfort or other concerns, displayed a normal gait, and exhibited no distress.

The Government emphasizes that a surgeon recommended removal of the lipoma in June 2025 and that the procedure occurred approximately two months later, in August 2025. It argues that Colunga received postoperative pain medication, wound care, and monitoring until the drain was removed and that the record indicates he recovered from the procedure. The Government also contends that Colunga receives medication, counseling, and monitoring for his hypertension, hyperlipidemia, obesity, and vision conditions. Accordingly, the Government argues that neither the individual conditions nor their cumulative effect establishes a terminal illness, an inability to provide self-care, or a need for long-term or specialized care that the Bureau of Prisons is failing to provide.

The Government next argues that Colunga's family losses and missed milestones do not satisfy U.S.S.G. § 1B1.13(b)(3). It contends that the deaths of his parents, his children's maturation, his daughter's marriage, and the births of grandchildren are painful but common life events rather than extraordinary circumstances within the policy statement. The Government further asserts that Colunga has not shown the death or incapacitation of a caregiver for a minor or disabled child, the incapacitation of a spouse or parent for whom he is the only available caregiver, or a comparably grave circumstance involving another immediate family member. It notes that the children and grandchildren have available caregivers and that Colunga's daughter proposes to care for him, rather than requiring him to serve as her caregiver.

The Government also rejects Colunga's sentencing-disparity argument under U.S.S.G. § 1B1.13(b)(6). It emphasizes that Colunga has not served at least ten years, identifies no intervening change in law, and instead challenges the continuing methamphetamine-purity Guideline on policy grounds. The Government further contends that Colunga cannot establish a gross disparity because his sentence includes a 120-month mandatory-minimum term imposed consecutively to the 120-month sentence from the Eastern

District of Arkansas. In the Government's view, criticism of the methamphetamine-purity Guidelines does not alter either mandatory minimum or the consecutive component that principally determines Colunga's aggregate term of imprisonment.

As to rehabilitation, the Government argues that six months without an incident report does not demonstrate exceptional rehabilitation, particularly because Colunga committed three sanctioned disciplinary violations while incarcerated. The disciplinary record reflects possession of a hazardous tool in September 2021 and possession of a telephone in February and August 2025. Although the Government acknowledges that Colunga's educational and vocational programming is commendable, it argues that such participation is already rewarded through First Step Act incentives and cannot independently establish an extraordinary and compelling reason.

Finally, the Government argues that the § 3553(a) factors independently preclude release. It emphasizes that Colunga transported approximately 4.12 kilograms of "Ice" methamphetamine, 1.4072 kilograms of a methamphetamine mixture or substance, and 9.072 kilograms of marijuana from Texas to Illinois and completed a $6,000 methamphetamine transaction in a public retail parking lot. The Government further stresses that Colunga committed the offense while on pretrial release in the Eastern District of Arkansas for a cocaine-trafficking conspiracy. In that case, Colunga admitted trafficking cocaine for eight months and making between twenty and thirty trips transporting cocaine across the United States.

The Government contends that committing another substantial drug-trafficking offense while on pretrial release demonstrates that release conditions and the prospect of a mandatory sentence did not deter Colunga. It argues that reducing his sentence would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public.

The Government also maintains that release would create an unwarranted disparity because defendants who commit a single comparable offense receive the same 120-month mandatory minimum, whereas Colunga has not served 120 months for either of his two federal drug-trafficking sentences. The Government therefore requests denial of the Amended Motion.

**III**

A court generally "may not modify a term of imprisonment once it has been imposed" unless modification is expressly authorized by statute or Rule 35 of the Federal Rules of Criminal Procedure. 18 U.S.C. § 3582(c), (c)(1)(B). Compassionate release under § 3582(c)(1)(A) is a narrow exception to that rule of finality. *Rutherford v. United States,* 146 S. Ct. 1320, 1326 (2026).

Section 3582(c)(1)(A) permits a court, after considering the applicable § 3553(a) factors, to reduce a term of imprisonment if extraordinary and compelling reasons warrant a reduction and the reduction is consistent with applicable policy statements issued by the Sentencing Commission. A defendant may file such a motion only after fully exhausting all administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf or after 30 days have elapsed from the warden's receipt of the defendant's request, whichever occurs first. 18 U.S.C. § 3582(c)(1)(A).

The exhaustion requirement is a mandatory claim-processing rule, although it is a waivable affirmative defense. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020). The defendant bears the burden of establishing extraordinary and compelling reasons warranting a reduction. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

The governing policy statement requires that extraordinary and compelling reasons warrant the reduction, that the defendant not present a danger to another person or the community, and that the reduction be consistent with the policy statement. U.S.S.G. § 1B1.13(a) (2025).

A defendant's medical circumstances may constitute an extraordinary and compelling reason if the defendant suffers from a terminal illness; a serious physical or medical condition, serious functional or cognitive impairment, or age-related deterioration that substantially diminishes the defendant's ability to provide self-care in a correctional facility and from which recovery is not expected; or a condition requiring long-term or specialized medical care that is not being provided and without which the defendant risks serious deterioration in health or death. U.S.S.G. § 1B1.13(b)(1). The relevant inquiry is not merely whether the defendant has serious diagnoses, but whether the conditions satisfy the policy statement's criteria, including whether they are terminal, substantially diminish the ability to provide self-care in custody, or require necessary care that is not being provided.

An unusually long sentence may constitute an extraordinary and compelling reason when the defendant has served at least ten years of the term of imprisonment and a change in law—other than a Guidelines amendment that has not been made retroactive—would produce a gross disparity between the sentence being served and the sentence likely to be imposed when the motion is filed, after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6). This provision therefore requires an unusually long sentence, at least ten years served, a qualifying change in law, a resulting gross sentencing disparity, and consideration of the defendant's individualized circumstances.

Family circumstances may constitute an extraordinary and compelling reason upon the death or incapacitation of the caregiver for the defendant's minor child or adult child who cannot provide self-care because of a disability or medical condition; the incapacitation of the defendant's spouse or registered partner when the defendant is the only available caregiver; or the incapacitation of the defendant's parent when the defendant is the only available caregiver. U.S.S.G. § 1B1.13(b)(3). The policy statement also encompasses similarly grave circumstances involving another immediate family

member, or a person whose relationship with the defendant is similar to that of an immediate family member, when the defendant would be the only available caregiver. For this purpose, an immediate family member includes a child, spouse, registered partner, parent, grandchild, grandparent, or sibling. U.S.S.G. § 1B1.13(b)(3)(D).

Rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). Rehabilitation may nevertheless be considered together with other circumstances in determining whether extraordinary and compelling reasons warrant a reduction. 18 U.S.C. Appx. § 1B1.13.

The Court must consider the asserted circumstances both individually and collectively because a combination of circumstances may be materially different from each circumstance viewed separately. *United States v. Vaughn*, 62 F.4th 1072, 1073 (7th Cir. 2023). Aggregation, however, does not cure the absence of circumstances that collectively rise to the level required by § 3582(c)(1)(A).

Even when extraordinary and compelling reasons exist, the Court must determine whether the applicable § 3553(a) factors support a reduction. 18 U.S.C. § 3582(c)(1)(A).

**IV**

**A**

The Government argues that Colunga failed to exhaust his administrative remedies because his request to the Warden does not make it clear that he presented the same grounds that he later raised in his Amended Motion. Colunga provides only thin details concerning the substance of his administrative request, and the Warden's response indicates that the request did not identify a qualifying circumstance or include supporting documentation.

The Court need not resolve the exhaustion dispute. As explained below, Colunga has not established extraordinary and compelling reasons warranting a reduction. Moreover, even assuming such reasons existed, he has not shown that the applicable § 3553(a) factors support a reduction.

Accordingly, for purposes of this Order, the Court assumes that Colunga exhausted his administrative remedies and proceeds to the merits.

**B**

Colunga's medical circumstances do not constitute an extraordinary and compelling reason for a sentence reduction. The record does not establish that he suffers from a terminal illness. His principal condition was a benign chest-wall lipoma, and his other identified conditions—including hypertension, hyperlipidemia, obesity, and vision disorders—are not described as terminal.

Nor does the record indicate that his conditions substantially diminish his ability to provide self-care. At an April 8, 2025 examination, Colunga reported exercising four days per week by performing pushups, burpees, and jogging. He denied pain and other concerns, exhibited no distress, and had a normal gait. The Amended Motion also describes his care level as stable and reports that he has maintained regular work assignments and consistently participated in educational programming. Although his postoperative drain temporarily restricted his movement and required assistance with wound care, that drain was removed in September 2025, and the motion identifies no continuing complication that presently prevents him from performing self-care.

The record further demonstrates that Colunga has received adequate and ongoing medical treatment. A surgeon evaluated the lipoma in June 2025, and it was surgically removed on August 27, 2025. He thereafter received pain medication, daily wound care, and continued management of the surgical drain. Subsequent wound-care records documented an intact incision without signs of infection, physician evaluation during dressing changes, and continued monitoring until the drain could be removed. Colunga's hypertension and hyperlipidemia likewise have been treated with prescribed medications and chronic-care monitoring, and medical staff counseled him regarding medication compliance and the risks associated with uncontrolled hypertension.

Finally, Colunga's principal condition has been addressed and has improved. The lipoma was excised, and the remaining postoperative issues identified in the record consisted of scarring, disfigurement, and temporary drainage—not an untreated or worsening mass. Although he emphasizes the delay preceding surgery and the discomfort and functional limitations he experienced during that period, the condition underlying those complaints has now been definitively treated.

Accordingly, because Colunga's conditions are nonterminal, have not prevented him from performing self-care, have received continuing medical treatment, and are either managed or improved, the Court concludes that his medical circumstances do not constitute an extraordinary and compelling reason for compassionate release.

**C**

Regarding family circumstances, the Court does not minimize the painful consequences Colunga and his family have endured during his incarceration. These circumstances, however, do not satisfy the applicable policy statement. No caregiver of a minor or disabled child of Colunga has died or become incapacitated, no incapacitated spouse or registered partner requires Colunga as the only available caregiver, and no incapacitated parent requires his care. Nor has Colunga established a comparably grave circumstance involving another immediate family member for whom he would be the only available caregiver. His parents' deaths, though profound losses, cannot support relief under the parental-care provision because they did not leave an incapacitated parent requiring Colunga's care. Likewise, separation from his children and grandchildren, missed milestones, and the burdens borne by his daughter do not establish the death or incapacitation of a caregiver or Colunga's status as the only available caregiver. Unfortunately, all of these circumstances, rather than being extraordinary, are oftentimes the ordinary consequences of a substantial term of imprisonment; the policy statement requires more than painful family separation and the ordinary,

though often severe, consequences incarceration imposes on a defendant's loved ones.

Because Colunga has not shown that his family circumstances fall within, or are similar in gravity to, the circumstances identified in the policy statement, they do not constitute an extraordinary and compelling reason for a sentence reduction.

**D**

Next, even though Colunga acknowledges he has not served at least ten years of his sentence, he nevertheless asks the Court to consider the length of his sentence when deciding whether extraordinary and compelling circumstances exist. That argument is a non-starter; this Court cannot ignore U.S.S.G. § 1B1.13(b)(6).

Nor does Colunga identify the required change in the law. The Court agrees that, under some circumstances, the disparity between the Guidelines' treatment of pure methamphetamine and a methamphetamine mixture may support a variance at sentencing. But a sentencing judge's decision to vary based on a policy disagreement with the methamphetamine-purity Guidelines is not a change in the law. Colunga identifies no amendment eliminating the purity distinction and instead relies on judicial criticism of a Guideline that remains in effect. A judge's exercise of sentencing discretion does not transform that criticism into the change in law contemplated by the policy statement.

Accordingly, Colunga's sentence and the methamphetamine-purity disparity do not establish an extraordinary and compelling reason for compassionate release.

**E**

As for rehabilitation, rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. See U.S.S.G. § 1B1.13(d), and even when considered with other circumstances, rehabilitation must be extraordinary to carry weight in the analysis. Colunga has participated in educational and vocational programming,

maintained work assignments, completed drug education and treatment, received a low recidivism-risk assessment, and qualified for First Step Act incentives. These efforts demonstrate progress toward rehabilitation, but they are not extraordinary. This conclusion is reinforced by Colunga's disciplinary record. He was sanctioned for possessing a hazardous tool in September 2021 and for possessing a telephone in February and August 2025. Accordingly, Colunga has not demonstrated extraordinary rehabilitation, whether considered independently or together with his other asserted circumstances.

**F**

Considering all of these circumstances together, rather than individually, does not alter the Court's conclusion.

Colunga's lipoma was surgically removed, he received postoperative medication and wound care, and his remaining chronic conditions are treated with prescribed medication. His family circumstances involve painful losses and separation, but no death or incapacitation of a caregiver for whom Colunga is the only available replacement. His methamphetamine-purity argument identifies no change in law, and Colunga has not served the ten years required for relief based on an unusually long sentence. Although his educational, vocational, and drug-treatment efforts are commendable, his record also includes three sanctioned disciplinary incidents, including two involving possession of a telephone in 2025.

None of those circumstances qualifies independently, and their combination does not materially alter the analysis. The medical and family circumstances remain outside the applicable categories, the asserted purity disparity does not transform the sentence into an extraordinary circumstance, and rehabilitation cannot supply what the other asserted grounds lack. Considered together, Colunga's circumstances do not constitute an extraordinary and compelling reason for a sentence reduction.

## V

Even assuming Colunga established extraordinary and compelling circumstances, the balance of the § 3553(a) factors weighs against compassionate release.

The nature and circumstances of Colunga's offenses are exceptionally serious. In this case, Colunga transported approximately 4.12 kilograms of "Ice" methamphetamine, 1.4072 kilograms of a methamphetamine mixture or substance, and 9.072 kilograms of marijuana from Texas to Illinois. He then accepted $6,000 for methamphetamine in the parking lot of an East Peoria business. These substantial quantities reflect serious drug-trafficking conduct and the significant danger that such conduct presents to the community.

Nor was this an isolated offense. At the time Colunga committed the offense conduct in this case, he was on pretrial release for a pending federal charge in the Eastern District of Arkansas alleging a conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. Colunga admitted in that case that he had trafficked cocaine for eight months and made between 20 and 30 trips transporting cocaine across the United States. The quantity of drugs involved in both cases underscores the seriousness and sustained nature of Colunga's conduct. Colunga is not a small-time drug dealer suffering the consequences of harsh mandatory minimums and Guideline ranges in drug cases; he is the type of drug dealer for whom those harsh penalties were designed.

Of particular concern, Colunga committed the present offense while on pretrial release for another federal drug-trafficking charge. That conduct was particularly brazen. The prospect of federal prosecution and the conditions of pretrial release did not deter him from transporting and distributing substantial quantities of controlled substances in another federal district. His willingness to reengage in large-scale drug trafficking under those circumstances demonstrates the

continued need for specific deterrence and protection of the public.

The Court has considered all applicable § 3553(a) factors, including Colunga's personal characteristics, medical circumstances, rehabilitation, institutional conduct, family support, and proposed release plan. Those considerations do not outweigh the substantial drug quantities involved in this case and the Arkansas case, the seriousness of the offenses, the brazen commission of this offense while on pretrial release, and the resulting need to protect the public and afford adequate deterrence. Those factors carry the greatest weight here. A reduction to time served, or even less of a reduction, would not adequately reflect the seriousness of Colunga's conduct, promote respect for the law, provide just punishment, protect the public, or deter future criminal conduct. Compassionate release is therefore not appropriate under § 3553(a).

**VI**

For the reasons stated *supra,* the counseled Amended Motion for Compassionate Release (D. 76) is DENIED, and, consequently, the *pro se* Motion for Compassionate Release (D. 68) is MOOT.

*It is so ordered.*

Entered on November 14, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE